Are you two sharing time of any any way or is she just there with you? No, just just here with me. Very well. Thank you, your honors, and may it please the court. Catherine Stein for Plaintiff Appellant Shikeb Saddozai, and I'd like to reserve three minutes for it. Very well, we'll try to help you keep your eye on the clock though, okay? Yes, definitely. Prison Litigation Reform Act requires the exhaustion of administrative remedies. Mr. Saddozai exhausted his administrative remedies nearly four years ago before filing his operative complaint in this case. This court in Rhodes v. Robinson, Kano v. Taylor, and Jackson v. Fong has three times affirmed that the PLRA requires exhaustion only before the operative complaint is filed, even if that's the amended complaint. As this court put it in Rhodes, as a general rule, when a plaintiff files an amended complaint, the amended complaint supersedes the original, and that's including as to the filing date. And if there is any question that this general rule of pleading applies here, the Supreme Court dispelled it in Ramirez v. Collier, where it concluded that this court's opinion in Rhodes applies with equal force to a case in a virtually identical procedural posture to this one. So, as no one disputes that Mr. Saddozai exhausted his administrative remedies far before filing the operative complaint in this case, Mr. Saddozai has met the PLRA's exhaustion requirement, and the district court was wrong to hold otherwise. And you're asking us to do what? I'm asking this court to reverse the district court's dismissal of Mr. Saddozai's case for failure to exhaust by applying this court's general rule of pleading from Rhodes, Kano, and Jackson. And is Jackson the most on-point case that you would refer us to? Jackson, yes. So, Jackson involves a procedural posture very similar to the one we have here. An individual filed an initial complaint without having fully exhausted, filed an amended complaint, and... How do you deal with the state's, what do you call it, the state's argument distinguishing Jackson on the basis of the facts, right? What went on in that case is different. Yes. So, it's our position Jackson isn't distinguishable from this case here because Jackson's reasoning is not limited to the fact of release, which is the sort of factual difference between what we have here, Mr. Saddozai remains incarcerated. But Jackson, in coming to its holdings, cited this court's decision in Rhodes and its decision in Kano and the general rule of pleading that the timing of the operative complaint controls. And what's more, it's important, I think, to remember that all of these cases are ultimately pronouncing on the meaning of a statute, the PLRA's exhaustion requirement at 1997 EA. And so, to distinguish Jackson on its facts would be essentially to hold that the word brought in the PLRA's language, no action shall be brought, refers at times only to the initial complaint, but then at other times to an amended complaint if it contains new claims or if the fact of release is relevant and there is, you know, no internal justification in the statute for that sort of duality of the word brought. And there's also no, you know, authority that defendant points to that reads brought that way. And rather, Mr. Saddozai has the better reading of the plain text of the statute. So, Mr. Saddozai reads the statute, the word brought in no action shall be brought to refer to. What's your response to what I gather to be the state's main point, which is, doing it this way, you really, it's just kind of a kabuki show. It doesn't really matter what is pled. They can always go to the latest complaint, no matter how many times they're permitted to amend. And basically, they get to go back to first base whenever they hit the home, if you will, a home run, but whenever they get a complaint that satisfies the requirements of the exhaustion within the administrative system of the prison before you get to the court. And this seems to move the ball to the other side of the judicial game, if you will, or the field. What's your response to that? Certainly, several responses, Your Honor. First, I would say that we know from Jones v. Bach that Congress intended the exhaustion requirement to be an affirmative defense. And so, if the purposes Congress had in mind with the exhaustion requirement would be intolerably felled by a complaint remaining in federal court for a certain amount of time, even if by the time the initial complaint was filed, a plaintiff had not fully exhausted, then Congress could have made the exhaustion requirement a pleading requirement, which we know it did not do. And then, what's more, district courts retain a fair amount of discretion under Rule 15 of the federal rules of civil procedure to grant or deny leave to amend. And certainly, if a complaint gets to a certain point in litigation and there are signs of gamesmanship or undue prejudice to defendants, a district court is permitted to deny leave to amend. And pragmatically, likely, the farther along a complaint gets in the course of litigation, district courts will be more inclined to deny leave to amend. As you well know, most of these types of complaints are pro se, and we tend to construe those liberally. Does that maxim play any role in this case? Your Honor, I think that the maxim that judges construe pro se complaints liberally certainly is of a piece with the general maxim over or underwriting Rule 15, which is that Rule 15 is intended to help plaintiffs get their cases heard on the merits where possible and avoid procedural dismissal. And so, I think that goal is only compounded by the fact that an individual proceeds pro se. Yes, but... So you just apply the normal pro se, liberally construed rules to this? There's nothing special about it? Yes, Your Honor, I believe so. Yes. Ms. Sion, even without considering the Ninth Circuit's position and assuming it's still open, that Jackson didn't decide everything for us, there's already a circuit split, isn't there, on this issue? Do you agree with me on that? Yes, Your Honor, there is a circuit split on this issue, so you have the Third Circuit in its decisions in Garrett v. Wexford Health and... Well, Third Circuit is the only circuit that comes down on your side, right? Well, Your Honor, in terms of other courts that have considered this specific question, so have considered whether the timing of the operative complaint controls in a situation where they're both interpreting the same text, so it's 1997 EA, and interpreting a situation where Rule 15 applies, so there's an amended or supplemental complaint. There, you only really have the Third Circuit, yes, in Garrett and Corb v. Hastings, and then a Seventh Circuit case, Chambers v. Sood, where that court... Actually, the question wasn't clearly briefed for the court, and the court sort of devotes a scant two paragraphs to discussing it, but they did imply that they come down on a different side. But the Third Circuit supports this court's reading, and then I would also point this court's attention to the Supreme Court's recent decision in Ramirez v. Collier, where the court was dealing with the case that was in an identical procedural posture to this one, so a plaintiff filed an initial complaint without having fully exhausted, filed an amended complaint that contained no new claims, just elaborated on the claims in the initial complaint, and at that point had fully exhausted, and the Supreme Court cites to this court's decision in Rhodes and the general rule of pleading that was, you know, affirmed therein to say likely the amended complaint there takes care of any exhaustion issues. So that's pretty conclusive evidence, and that's also the Supreme Court dealing with a case that looks identical to this one, at least where exhaustion is concerned. Do you see room for abuse of this if we rule in your favor? Your Honor, I don't believe so because, I mean, for several reasons. Again, district courts retain discretion to grant or deny leave to amend, and so district courts, you know, have the ability to act as a backstop and to deny leave to amend should they detect abuse. And then what's more, you know, as we've discussed, largely these cases are involving pro se litigants and, you know, incarcerated individuals don't have a lot of control over either the proceedings of the internal grievance processes or of federal courts, so it, you know, is a very big and sophisticated risk to take to decide that you are going to try to game the system. And, you know, this court, of course, in Rhodes, Kano, and Jackson has been applying the same rule, and we haven't seen any sort of, you know, mass flight to the courts or, like, mass undermining of the PLRA's exhaustion regime. So rather, again, this—well, sorry—well, because this rule also is derived from the normal operation of Rule 15, and that's something that this court considered in Rhodes, Kano, and Jackson, that also sort of helps us with the idea that this could undermine the PLRA or be subject to abuse. And as we cite it at pages 25 to 28 of our opening brief, there are several other statutory regimes also involving mandatory statutory prerequisites where this court, the Supreme Court, has seen fit to apply the normal operation of Rule 15 and look to the timing of the operative complaint, and likewise those statutory regimes have remained intact. And, you know, this court and the Supreme Court didn't express any grave concern that the normal operation of the federal rules would fatally undermine them. And, you know, what's more, again, I would turn back to the plain text of the statute here, which also supports Mr. Saduzai's position. Mr. Saduzai reads the language of the PLRA's exhaustion requirement that no action shall be brought until exhaustion. He reads the word brought to refer to the filing of the operative complaint. And in addition to the fact that that is how this court has understood the statute in Rhodes, Kano, and Jackson, also again at our—in our opening brief at pages 25 to 28, as well as footnote 7, we point to several other authorities interpreting similar or identical language and statutory constructions to also refer to the filing of the operative complaint. We also point to—at footnote 2 of our reply brief—to other usages of the word brought or bring in the PLRA itself where courts understand that to refer to the bringing of the operative complaint. So there's sort of a robust consensus in interpreting statutory language like this that it refers to the filing of the operative complaint. I want to save any of your time. You said three minutes. You have less than that now, but if you'd like to save that very butter, you're welcome to do so. Yes, thank you, Your Honor. I'd like to save the rest of my time for real. Very well. Okay. Let's hear from Mr. Wu, representing the San Quentin Warden. Good morning. Good morning. Good morning, Deputy Attorney General Oliver Wu for defendant appellees. This court should affirm the dismissal because the PLRA requires prisoners to exhaust their claim before bringing it to court for three reasons. First, the text of the PLRA requires exhaustion before a claim is brought. Second, exhaustion under the PLRA cannot turn on— Wait, wait, wait. Before a claim is brought? Correct. You mean filed in the district court? Yes, Your Honor. The text of the PLRA requires states that no action may be brought until administrative remedies, as are available, are exhausted. So the plain meaning of the text requires prisoners to exhaust administrative remedies before bringing it to court for the As I understand the facts of this case, Mr. Chiodosi made a lot of different complaints at different levels, and they were all turned down, and then he filed. Now, there was some discussion with the district court about what happened at what time, but the issue here seems to be if you have a complaint that gets amended but eventually meets the requirements of the district court, is that what governs or the original filing? That's really what we're talking about here, isn't it? Yes, and to respond, it would be the original filing that's relevant because the PLRA requires exhaustion before a claim is brought for the first time. I understand, but the case law, and that's, I guess, where we're going to get to with Jackson, Rhodes, and so on, and the Supreme Court's recent Ramirez case seem to suggest that certainly for purposes of this statute that it's going to relate back if it gets satisfied. What's your best argument that Jackson, for example, doesn't control here? I have two, Your Honor. Okay. So first, to address the Supreme Court's recent decision in Ramirez, the court did not decide the issue. They simply pointed out that the petitioner had an arguable question, and as appellants acknowledge, there is a circuit split on this issue, with the Fifth and Eleventh Circuits finding that an amendment does not cure the exhaustion defect. And secondly, Jackson is a unique case with very unique facts, and as the court pointed out earlier, Mr. Jackson was no longer a prisoner by the time he filed his admitted complaint, and so it makes sense that the PLRA does not apply to a non-prisoner, and so this court should and confine Jackson to those facts. But forgive me, was he not complaining, though, about matters that occurred while he was in prison? I'm sorry, Your Honor? Was he not complaining about things that occurred while he was still in prison? In other words, his complaint was not seeking his release. He was complaining about something that occurred while he was incarcerated, right? Yes, Your Honor. And that's really—admittedly, Mr. Satozai is not released, but they're both complaining about things that they alleged occurred while they were in prison. So I'm not sure that that, at least for me, that cuts a lot of water in so far as distinguishing Jackson. Have you got anything else that distinguishes that case? Certainly. So if this court believes that Jackson must be read for the broader proposition, then the Jackson decision is clearly irreconcilable with the Supreme Court's intervening decision in Ross, which held that the only exception to the exhaustion requirement is availability. And the Supreme Court in Ross also held that courts cannot excuse exhaustion for any special circumstance. But what appellants asked this court to do here would be to create such a special circumstance, namely whether a plaintiff is able to amend their complaint. Under appellant's proposed exhaustion rule would essentially become—prisoners are required to exhaust their complaints—exhaust their claim before bringing them, unless they can amend to state they've exhausted at some later date. But the PRA does not allow for that amendment exception. It simply states that no action may be brought until administrative remedies are exhausted. So the fact that a plaintiff can bring a claim again and exhaust it after they brought it again does not change the fact that the claim has already been brought, and the PRA requires exhaustion by the time a claim has been brought for the very first time. And contrary to appellant's argument, this court has held that brought means bring for the first time before. In Vaden, this court held that an action is brought for exhaustion purposes under the PRA when the complaint is tendered to the first original complaint or first amendment complaint under, for example, in Rhodes. It has already been brought before the court, and prisoners must be required to exhaust by that date. Let's say all that's correct. We arguably have at least three cases that say to the contrary. We're just a three-judge panel. Aren't we bound by our existing jurisprudence? Even if it's wrong from your perspective, without a non-bond court to overturn it or the Supreme Court overturning it, aren't we bound by our precedent? Two responses. First, to directly answer the question, no, because the Ross decision is, because those decisions, if read for the proposition that clearly are irreconcilable with Ross, Ross is holding that there's only one exception to the exhaustion requirement. So you're saying that Ross, a Supreme Court case, under Miller v. Gammey is irreconcilable with Jackson, Rhodes, and so on. Is that correct? It's irreconcilable with Jackson. We don't believe it's irreconcilable with Rhodes and Kano, because Rhodes and Kano dealt with a situation where the plaintiff was bringing a claim that was not brought before. So in Rhodes, the new claim was brought in an amended complaint. That was the first time it was brought, and the prisoner had exhausted their claim by the time they brought them and alleged them in their amended complaint. So Rhodes and Kano are, so Rhodes and Kano can be harmonized with our reading of the PLRA. And Jackson, if confined to the narrow facts of that case, can also be harmonized as well. And this interpretation, the interpretation of the PLRA requiring a strict adherence to the exhaustion requirement, is further reinforced by the legislative history of the statute. Before the PLRA was passed, prisoner lawsuits were governed by the Civil Rights of Institutionalized Persons Act. And under CRIPA, district courts were authorized to issue discretionary stays to allow prisoners to finish exhausting their claim. Appellant's proposed rule would return the exhaustion framework to the one under CRIPA. There is no functional difference between a district court explicitly issuing a 30 or 60-day stay to allow a prisoner to finish exhausting their claims, and a district court granting 30 or 60 days to amend their complaint, provided that they exhaust in the meantime. And so because this exercise of discretion has already been explicitly rejected by Congress, the court cannot return the exhaustion framework back to the way it was. Okay, let's say you're correct. And let's say that you've been able to distinguish Rhodes and Kano. If we don't agree with you that Miller v. Gammie governs vis-a-vis Ross and Jackson, are we not still bound by Jackson to rule in Mr. Sedosi's favor? You can appeal it, of course, but are we not bound by that? So if the court believes that Jackson is not clearly reconcilable, then it would require an en banc panel. Okay, and we can't do that, you know. Correct. But we believe that Jackson is clearly reconcilable with the intervening decision in Rhodes, in Ross, sorry. And in addition to the discretionary aspect of CRIPA, when Congress passed the PLRA, it also wanted to incentivize prisoners to comply with prison regulations, exhaust their claims, and to increase the quality of prison lawsuits. And so the adherence to a pre-filing exhaustion requirement is not merely an exercise in formalism. There are real consequences for prisoners who fail to exhaust before bringing their claim. Prisoners have to repay the filing fee, and if a failure to exhaust is apparent on the face of the complaint, that complaint could be dismissed for failure to state a claim, which could constitute a PLRA strike. And these and follow prison regulations. A pre-filing exhaustion requirement also allows prisons to work and solve these issues before they come to court. For example, in a religious rights case, where a prisoner is claiming that, is alleging that they were denied religious meals, if they were required to exhaust before bringing a claim, the prison officials could remedy the complaint from coming to court. But in the exhaustion framework that appellants suggest, prisoners would have very little incentive to work things out and allow prison officials to work out the issue. A prisoner who has already drafted a complaint, paid a filing fee, and potentially engaged in motion practice has much less incentive to work with prison officials to address their complaints. And so, by allowing prisoners to exhaust after they sue, that would cut back Congress's objectives in passing the PLRA. And what do you do then with Ramirez? Doesn't Ramirez suggest that your position is not what the current Supreme Court would follow? So, I disagree, Your Honor. Okay, tell me why. So, the Supreme Court, for two reasons. First, the Supreme Court, as appellants recognize in the 28J letter, didn't decide the issue. They simply pointed that this is a reasonable argument and that, as I mentioned earlier, there is a circuit split on this question. And secondly, the Supreme Court cited Rhodes for the general proposition, the general rule that amended complaints supersede the original. But the effect of an amended complaint doesn't, is not, the superseding effect of an amended complaint is not all-encompassing. The original complaint, the procedural effect and the timing of the original complaint is still relevant. For example, in the Relation Back doctrine, courts still look to when the original complaint was filed. And the procedural effect of the original complaint is still active. So, plaintiffs don't have to reallege dismissed claims to preserve them on appeal. Well, from your perspective, any jurisprudence in our circuit or anywhere else that permits the filing of an original complaint before there's complete exhaustion is a violation of the PLRA, right? Correct, Your Honor. So, basically, we've got at least two circuits, the third and the ninth, that feel differently. So, there you have it. So, the third circuit decided, adopted an appellant position. The ninth circuit, this circuit, has allowed, has allowed amended complaints to reallege claims only when the prisoner is no longer a prisoner. And under that situation in Jackson, that makes sense because the prison litigation reform act should not apply to non-prisoners. If Sardoz is still in prison now? I'm sorry, Your Honor? Is he in prison now? Yes, Your Honor. Mr. Sardoz is still incarcerated. Okay. And so, in Rhodes and Kano, as I mentioned earlier, they would bring new claims that were not, that were not previously brought. And so, the, and so, the amending, the fact that the plaintiff may amend their complaint does not change the timing of when exhaustion is required. In Jones, the Supreme Court said that you look to the federal rules for consideration, for consideration on how to proceed when the PLRA is silent. But the PLRA is not silent on the question of when exhaustion must occur. The PLRA says you have to exhaust before a claim is brought. And so, there is no need to even look at Rule 15, to look at amendment questions to determine the timing of exhaustion. And for that reason, the, this court should affirm the dismissal of the Mr. Sardoz's complaint. I'd like to very briefly address Mr. Sardoz's inavailability argument with two quick points. First, in their briefing, appellants claim that Mr. Sardoz was informed by the warden that he did not need to exhaust, did not need to appeal further, that he had no further remedies. But they cite two allegations in his amended complaint. And those allegations refer to the second level response in the grievance process. And that is a, and Mr. Sardoz was provided a response from the warden's office, a relatively standard response informing him that his claim was rejected, and that if he wanted to exhaust his claims, he needed to appeal to the third and final level. And the record also shows that Mr. Sardoz was plainly able to exhaust his administrative remedies to the third and final level, and that remedies were available to him. So this court should... So you're saying there were remedies available to him at the third and fourth level? There were, administrative remedies were not unavailable to him. Well, I mean, he got the appeal, but they didn't do anything, right? Correct. And the, his claims were eventually rejected at the third and final level, but they were not unavailable in the appeal. And further, it was futile. Does it matter? I don't know, Mr. Sardoz. But if he's like most folks in or out of prison, they're not really very sophisticated about the minutiae of complaints in this setting. Do we cut him any slack for his understanding? If he was told by somebody along the line, hey, you're done. You're, you know, you're all set. Can he rely on that? So... You can answer the question. Your time is up. Go ahead and answer the question. So in this case, he was informed through the second level response, which also informed him that he has to continue appealing. He has to continue exhausting his claim. And if it were the case that a standard second level response made remedies unavailable, then virtually every California prisoner would have unavailable remedies under the current scheme, and that would be an incredible result. And again, Mr. Sardoz did exhaust his remedies in time, and so this court should reject that argument. Okay. Let me ask whether either of my colleagues has additional questions for the government. No. I think not. So thank you very much. So, Ms. Tsion, you have some rebuttal time. And I hope you're going to address his position about Ross and our Miller v. Gamme case and whether those two are irreconcilable. Yes, Your Honor. You read my mind. So to first address, well, a couple points that I'd like to try to address, but to start with defendant's argument that Ross somehow overrules Jackson based on this court's standard that Ross must be, you know, clearly irreconcilable with Jackson. And that is not the case. The Supreme Court has told us that exhaustion is mandatory and that besides for the specific textual exception of unavailability, courts cannot excuse exhaustion. This court in Jackson and in Rhodes and Kano never excused exhaustion. Mr. Sardoz, I hear, exhausted his administrative remedies, finished exhausting, and an amended complaint could not have saved him if he failed to do so. Rather, the question is by when someone must exhaust, not whether they must exhaust, as the question was in Ross itself. What about in Jackson? Jackson as well, you know, although Jackson was released from prison before he filed his operative complaint, the question there was whether the timing of the operative complaint or the initial complaint controlled the same. Another iteration of the same question here. So if you were, if you were in our situation and you had to write why Miller v. Gammy does not apply vis-a-vis Ross and Jackson, what would you say? In brief. Yes. I would say that the reasoning in Ross is not clearly irreconcilable with the reasoning in Jackson because Ross says that district courts cannot excuse exhaustion and in Jackson this court did not excuse exhaustion. Rather, it determined that exhaustion should be assessed at the time that the operative complaint was filed and at that time that individual was released from prison and at that time in this case, so when Mr. Sardoz filed the operative complaint in this case, he had fully exhausted. So it's not a question of waiving exhaustion. It's a whole separate one. He did exhaust from your perspective and the only issue seems to be as your opponent suggests, you can't even file in the district court until exhaustion is complete. What's your response to that? I see my timer is running. You can answer it. Of course. Well, my response is that again, it is basically standing practice in all courts that individuals are getting into or filing their cases before they exhaust. You know, exhaustion is an affirmative defense and so it's not, it's only the rare case in which courts will be dismissing a complaint for failure to exhaust at the pleading stage or based on a 12b6 motion to dismiss. So again, Congress clearly contemplated a situation where individuals could get and stay for a certain amount of time into federal court. What's your take on your, if I understand your opponent's that you can't file an action until it's exhausted. And I gather what you're saying is that whatever the statute says, that's not what's happening. Is that right? No, Your Honor. Sorry. I should be clearer. Actually, I'm saying that the statute says the word brought in the PLRA's action, no action shall be brought, refers to the filing of the operative complaint. So the statute says just what this court's decisions in Rhodes, Kano, and Jackson have understood it to say, which is that you must exhaust before bringing your operative complaint in an action. And because Mr. Sattesai did so here, I would ask this court to reverse the district court's holding otherwise. Very well. Let me ask my colleagues whether either has additional questions for Ms. Kane. No. Very well. Thank you very much for both counsel. Your arguments have been very helpful. We appreciate it. Case of Sattesai versus Davis is submitted.
judges: Siler, TASHIMA, SMITH